358 So.2d 1224 (1978)
STATE of Louisiana
v.
James HARVEY and Rennie Atwell.
No. 60979.
Supreme Court of Louisiana.
April 10, 1978.
Rehearing Denied May 19, 1978.
Concurring Opinion May 26, 1978.
*1227 John M. McCollam, Andrew L. Gates, III, Gordon, Arata & McCollam, New Orleans, for James Harvey.
Ralph H. Fishman, Peter S. Title, Sessions, Fishman, Rosenson, Snellings & Boisfontaine, New Orleans, for Rennie Atwell.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Brian G. Meissner, Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
James Harvey, Rennie Atwell, and Diane Lawrenson were indicted for the first degree murder of one Robert A. Alexander. La.R.S. 14:30. Lawrenson's indictment was subsequently severed from her co-defendants'. She was granted immunity by the State and testified at the trial of Harvey and Atwell, implicating both in the crime. According to the State's theory of the case, as presented through Lawrenson's testimony, Atwell, Harvey and Lawrenson conspired to rob Alexander; the murder of Alexander occurred during an armed robbery committed by Atwell and Lawrenson pursuant to the conspiracy; and the proceeds of the robbery were later divided among the three co-conspirators.
After a trial by jury, both Harvey and Atwell were found guilty of first degree murder without capital punishment. They were subsequently sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. On this appeal Atwell relies upon eleven assignments of error and Harvey relies upon nine assignments of error.

ASSIGNMENTS OF ERROR: NO. 1 OF BOTH DEFENDANTS
In these assignments, defendants argue that the trial court erred when it refused motions for severance made prior to trial.
In his motion for severance, Atwell alleged that Harvey would testify that "he was not present during the armed robbery and murder, and that he is wholly innocent and uninvolved in the case," and that such testimony would have the effect of placing the entire blame for the armed robbery on Atwell.
Harvey argues that he was prejudiced by the failure to sever because he was prevented from calling his co-defendant as a witness in his behalf. La.R.S. 15:461. He contends that "by being denied a severance from Rennie Atwell, James Harvey was in effect denied his constitutional right to compel the attendance of witnesses because he could not even call much less compel Rennie Atwell to take the stand." He asserts that the joint trial precluded him from calling "the one witness who could have exculpated him from the crime of murder."
*1228 We find that the instant record does not indicate that the trial judge abused his discretion in refusing to sever the trials of the co-defendants. La.C.Cr.P. art. 704 provides:
"Jointly indicted defendants shall be tried jointly unless:
"(1) The state elects to try them separately; or
"(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance." (Emphasis supplied.)
In support of his motion for severance, Atwell relied upon State v. Thibodeaux, 315 So.2d 769 (La.1975), for the proposition that a severance is mandated when a defendant presents convincing evidence that his defense is antagonistic to the defense of his co-defendant. In that case, we discussed the import of Article 704 in the face of a claim by co-defendants that their defenses are antagonistic:
"[I]t is clear that defenses of co-defendants are mutually antagonistic where each defendant attempts to place the blame on the other. Under such circumstances, a defendant must defend not only against the state, but also against his co-defendant. In such an instance, justice would require a severance.
"However, mere allegations that the co-defendant intends to point an accusatory finger at the defendant as his own defense is not enough. Article 704 requires the defendant seeking a severance to satisfy the trial judge by convincing evidence that justice requires a severance. While the granting or refusal of the motion for severance is within the sound discretion of the trial judge, his rulings are subject to our review for abuse." 315 So.2d at 771.
See also, State v. Singleton, 352 So.2d 191 (La.1977).
In the instant case, Atwell's co-defendant James Harvey testified at the trial. Contrary to Atwell's assertions, Harvey said nothing which would in any way implicate Atwell in the robbery; rather, he denied any knowledge whatsoever of the armed robbery and the murder of Anderson. To the extent that he refuted state testimony regarding a conversation during which the robbery plot was allegedly concocted, Harvey's testimony was actually favorable to Atwell. We find in the record no "convincing evidence that justice require[d] a severance," and we therefore conclude that the trial judge did not abuse his discretion in denying Atwell's motion.
We likewise find no error in the trial court's rejection of defendant Harvey's motion for severance, which was based on his desire to call his co-defendant, Atwell, as a witness. In State v. Medlock, 297 So.2d 190,193 (La.1974), we set forth the general rule relating to such allegations by stating that "defendants' bare allegation that a joint trial would deprive them of the right to call the co-defendants as witnesses" is not of itself a sufficient ground to grant a severance. This Court stated that "such an allegation does not, of itself, warrant severance since the co-defendants can plead the Fifth Amendment privilege against self-incrimination at the separate trials." See also, State v. Hunter, 340 So.2d 226 (La. 1976); State v. Baker, 288 So.2d 52 (La. 1973). We do not find that the trial judge abused the discretion afforded him by the Louisiana Code of Criminal Procedure in denying James Harvey's motion for severance. Defendants' first assignments of error lack merit.

ASSIGNMENTS OF ERROR: HARVEY'S NO. 2 AND ATWELL'S NO. 9
Defendants argue that the trial judge erred in allowing the introduction of State's Exhibits 3, 4, 5, 6, and 7, photographs of the victim taken at the scene of the crime and at the morgue prior to the coroner's autopsy. They contend that, under State v. Gilmore, 332 So.2d 789 (La. 1976), their offers to stipulate as to the victim's identity, the cause of his death, and the fact of his death deprived the photographs of any probative value which they might have had and rendered their admission highly prejudicial. The State, however, *1229 asserts that the photographs were probative as tending to corroborate the testimony of its eyewitness, Diane Lawrenson, as to the manner in which the robbery was committed and Alexander killed.
In State v. Gilmore, 332 So.2d 789 (La. 1976), we discussed the effect of a defense offer to stipulate to the content of photographs offered into evidence by the State. We stated:
"* * * Particularly where, as here, the fact to be proved is not seriously at issue a judicial admission offers an expeditious means of serving both the State's interest in meeting its burden of proof and the defendant's interest in excluding prejudicial material. To reserve to the State the right to accept or reject the stipulation is to forego an objective balancing of these countervailing interests and to invite the State to exploit the prejudicial impact of the evidence. This was demonstrated in the instant case. When the State asked at trial that the photograph be shown to the jury, the judge remarked, `I don't see why the jury has to see the picture;' but at the State's insistence, he complied with the request. Implicit in the State's refusal to accept the stipulation is the suggestion that it sought to gain something more from the admission of the photograph than proof of the murder victim's identity. If this `something more' was merely the inflammatory effect of the photograph, the trial judge should have had the authority to prevent it.
"On the other hand, a defendant may not be permitted to rob the State's evidence of its fair and legitimate weight by means of a unilateral stipulation:
"`Nevertheless, a colorless admission by the opponent may sometimes have the effect of depriving the party of the legitimate moral force of his evidence; furthermore, a judicial admission may be cleverly made with grudging limitations or evasions or insinuations (especially in criminal cases), so as to be technically but not practically a waiver of proof.' Id. [9 Wigmore on Evidence, § 2591 (3d ed. 1940)]
The sensible solution, offered by Wigmore, is to leave the question of admissibility to the trial judge:
"`* * * Hence, there should be no absolute rule on the subject; and the trial Court's discretion should determine whether a particular admission is so plenary as to render the first party's evidence wholly needless under the circumstances.' Id.
"Therefore, when the case is tried again, it will be for the trial judge to determine whether a stipulation may prevent the admission of the photograph into evidence." 332 So.2d at 796.
From an examination of the photographs and a survey of the record before us, we are unable to conclude that the trial court abused its discretion in allowing admission of the photographs. Unquestionably, the photographs of the robbery scene and of the victim's body, showing the entry wound made by the bullet, are corroborative of Diane Lawrenson's account of the commission of the crime. State v. George, 346 So.2d 694 (La.1977). Further, the photographs in question are not particularly gruesome, although the use of black and white film is certainly preferable to the color photographs here admitted. Taking into account the fact that the defendants' offer to stipulate diminished considerably the probative value of the evidence, we are nevertheless unable to find that the trial judge abused his wide discretion in determining that the stipulation was not so plenary as to render the State's evidence wholly needless under the circumstances. State v. Gilmore, supra; State v. Williams, 343 So.2d 1026 (La.1977). Consequently, these assignments present a serious question, but not reversible error.

ASSIGNMENT OF ERROR NO. 2 BY ATWELL
In this assignment, defendant Atwell argues that the trial court should have quashed the indictment which charged him with first degree murder because the grand jury was illegally selected as a result of the *1230 exclusion of the residents of Desire Housing Project from the grand jury venire. In making this argument, Atwell relies upon our decision in State v. Cage, 337 So.2d 1123 (La.1976). In that opinion, we affirmed a trial court decision granting a motion to quash based upon the identical grounds advanced by the present defendant. Atwell now argues that the Cage decision should be applied retroactively so as to invalidate his indictment by a grand jury drawn from the same jury venire which was reprobated by this Court in Cage.
Today, in State v. Ferguson, 358 So.2d 1214 (La.1978), we determined that "Cage should be applied only prospectively to jury venires improperly constituted by reason of the practices reprobated by the Cage holding, especially since the practices were terminated as a result of the Cage decision." Id. at 1216.
Accordingly, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 3 BY HARVEY
This assignment presents the issue of the refusal of the trial court to grant defendant Harvey's motion for a new trial. At the hearing on the motion, Atwell testified that he and Diane Lawrenson had committed the robbery, and that Harvey was in no way involved in the conspiracy. At the conclusion of Atwell's testimony, the court denied the motion, stating: "I feel the defendant [Harvey] was indeed a principal in the case."
In State v. Bastida, 271 So.2d 854 (La. 1973), this Court considered a similar situation in which a trial court denied a motion for a new trial despite the posttrial exculpatory testimony of a convicted co-defendant. Our holding that the trial judge's decision to deny the motion fell within the broad range of discretion afforded him was expressed as follows:
"This Court has repeatedly held that the trial judge has wide discretion in ruling on a Motion for a New Trial. Since the judge found as a fact that the allegedly newly discovered evidence is incredible, his denial of a new trial will not be disturbed on appeal. State v. Miller, 254 La. 73, 222 So.2d 862 (1969); See also State v. Cancler, 252 La. 380, 211 So.2d 298 (1968), and authorities there cited." 271 So.2d at 857.
Although the trial judge in the instant case has not favored us with a per curiam to this assignment of error, it is apparent from his oral comments at the conclusion of the hearing on the motion that he found Atwell's testimony lacking in credibility. In view of the wide range of discretion afforded the trial judge, there is a sufficient evidentiary basis in the record to support the refusal to grant the new trial. Accordingly, we find that this assignment is unmeritorious.

ASSIGNMENTS OF ERROR NOS. 3 AND 4 BY ATWELL
Prior to trial, Atwell filed written motions to require the State to disclose the prior arrest and conviction records of all jurors and prospective witnesses, or in the alternative, to enjoin the State from using such information. Defendant subpoenaed the district attorney, the first assistant district attorney, the chief investigator of the district attorney's office, and the superintendent of the New Orleans Police Department in an attempt to prove that the district attorney's office ascertains the prior criminal records of all jurors and witnesses in a pending case by checking each juror or witness through either the National Crime Information computer or the City of New Orleans Police computer. Defendant alleged that the officials who control the computers will not permit him to use the computers to obtain the same information; he further alleged that no alternative method for acquiring such information was available to him.
The trial judge denied the motion and quashed the subpoenas, stating:
"Well, accepting everything you say to be true, relative to the factual statements, I feel that your motion should be denied."
*1231 Harvey also requested that he be allowed to examine the prior voting records of prospective jurors; his motion was likewise denied by the trial court.
A motion for disclosure of information relating to the prior criminal records of jurors presents an issue analogous to that raised by a defendant's request for access to the State's compilation of the voting records of prospective jurors during their service on previous petit juries. Consequently, such motions are controlled by this Court's decisions in State v. Singleton, 352 So.2d 191 (La.1977); State v. Rey, 351 So.2d 489 (La.1977); State v. McGhee, 350 So.2d 370 (La.1977); State v. Holmes, 347 So.2d 221 (La.1977); State v. Wright, 344 So.2d 1014 (La.1977). In Singleton we reviewed the earlier cases and discussed at length the showing which a defendant must make to support a claim that denial of access to such information constitutes reversible error:
"This issue has recently been before us several times. In the case of State v. Wright, 344 So.2d 1014 (La.1977), the defendant moved before jury selection for a copy of the district attorney's list which indicated how prospective jurors had voted in prior jury trials and the type of case heard by each of the prospective jurors. We assumed without deciding that the lists were the work product of the district attorney's office and held that to discover a work product a litigant must demonstrate that denial of such production would unduly prejudice the preparation of his case or cause him hardship or injustice. We stated that:
"`In order to make such a showing. . .he would have been required to demonstrate that he could not practicably obtain information from other sources, and that the state intended to use it in selecting the jury. Had defendant done so, he should have been given the information before voir dire or else allowed to question the prospective jurors on the subject.' 344 So.2d at 1017. "* * *
"In State v. Rey, La., 351 So.2d 489, handed down October 10, 1977, the Court again found no merit in defendant's complaint that he had not been given the lists because:
"`In the present case, the record indicates that the prosecutor assembled his information on the voting records of prospective jurors from the records in the office of the clerk of court and that the same records are available to any defense attorney. The defendant has failed to demonstrate the required prejudicial effect of the denial of access.'
"Moreover, in State v. Holmes, 347 So.2d 221 (La.1977), this Court found defendant's request for lists premature because voir dire examination had not been conducted and defendant had not shown that he could not get the information by other means (i. e. by questioning jurors on voir dire). And in State v. McGhee, La., 350 So.2d 370, handed down September 19, 1977 the Court found error in the trial judge's refusal to allow counsel to ask prospective jurors on voir dire what the verdict was in previous juries of which they had been a member. * * *
"In the case now before us, we conclude that defendant Singleton has failed to make a showing that he could not gain the information he requested other than by the state's production of the lists in question. None of the prospective jurors were questioned about their past jury service nor criminal records on voir dire examination. Under these circumstances, we find no reversible error in the refusal of the trial judge to order production of the lists. C.Cr.P. art. 921." 352 So.2d at 193-194.
In the instant case, the trial judge accepted as true the allegations contained in defendant's motion i. e., that the State possessed the information, that it intended to use it in selecting the jury, and that the defendant could not practically obtain the information from other sources. Under the circumstances, the defendant was then entitled to be "given the information before voir dire or else allowed to question the *1232 prospective jurors on the subject." State v. Wright, supra, at 1017. The defendant was not given the information before voir dire. However, the record provided for our review does not reflect that the defendant was denied the right to question the prospective jurors on the subject. Under these circumstances the trial court's denial of defendant's motion for prospective jurors' criminal records did not amount to reversible error.
Under these assignments defendant Atwell further argues that the trial court erred in refusing to order the State to provide him with the prior criminal records of prospective state witnesses in response to a pretrial motion. Defendant relies by analogy upon State v. Singleton, supra, and other cases concerning discovery of information relating to prospective jurors. In our view, however, defendant's motion was actually a request for access to exculpatory evidence based on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In Brady, the Court stated that the "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ." 373 U.S. at 87, 83 S.Ct. at 1196. This Court in State v. May, 339 So.2d 764 (La.1976) held that Brady can encompass evidence which is materially favorable to the accused as impeaching evidence. See also, Williams v. Dutton, 400 F.2d 797 (5th Cir. 1968).
The Supreme Court, in United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), enunciated principles for determining the materiality of evidence suppressed by the prosecution, stating:
"* * * Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable. 96 S.Ct. at 2399."
However, a trial court's failure to follow this procedure before trial may not be reversible error. In Agurs, the Court, in delineating the significant and practical difference between the pretrial decision of the prosecutor or the trial judge and the post-trial decision of the judge on the issue of disclosure, stated:
"`The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that [in a post-trial hearing by the court] if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.' 96 S.Ct. at 2401-02."
This Court, in State v. May, 339 So.2d 764 (La.1976) adopted and applied the Agurs procedure. See also, State v. Falkins, 356 So.2d 415 (La.1978), No. 60,628.
In the instant case, the defendant's request for information from the prosecutor, insofar as it called for the prior conviction records of the State's witnesses, constituted a specific and relevant request. Therefore, we conclude that the trial judge fell into error in not requiring the prosecutor to respond to the specific request of the defendant by stating whether the State had knowledge or possession of the conviction records, and, if so, by not requiring the prosecutor to furnish them to defendant or submit them to the court for a determination as to whether the defendant was entitled to this material.
*1233 In light of the procedure established in Agurs, supra, and State v. May, supra, this case will be remanded to the trial court for it to determine, (1) if there was a suppression of subject matter requested for which there was a substantial basis for claiming that materiality existed, and, if so, (2) whether the material suppressed by the State would upon its evaluation in the context of the entire record create a reasonable doubt as to the defendant's guilt. Should the trial court find such a reasonable doubt exists after its evaluation, a new trial will be required. If the trial court finds there was no suppression of material which should have been disclosed, or if it finds, after an evaluation as described, there is no reasonable doubt as to the defendant's guilt, the conviction and sentence will be affirmed. Of course, the proceedings and determinations of the trial court will be subject to review by this Court on appeal.

ASSIGNMENTS OF ERROR: NOS. 4 BY HARVEY AND 10 BY ATWELL
In these assignments of error, the defendants contend that the closing argument of the State's attorney was so prejudicial that they were effectively denied the right to a fair trial. Despite the fact that the defendants requested neither an admonition nor a mistrial, the trial judge did admonish the jury on several occasions after sustaining defense objections to state argument. Although the defendant, by failing to move for a mistrial pursuant to Louisiana Code of Criminal Procedure Articles 770 and 774, waived his right to complain of the action of the trial judge in giving only an admonition, and although the prompt action of the trial judge in strongly admonishing the jury probably prevented the inflammatory statements from being so prejudicial as to require reversal, we nevertheless believe that the rhetorical excesses of the prosecuting attorney, which tended to characterize the trial as a vehicle for vindication of the victim, are deserving of comment.
Louisiana Code of Criminal Procedure Article 774 provides that the State's argument "shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." The article specifically commands that the argument "shall not appeal to prejudice."[1]
In the instant case the record easily supports a conclusion that the State's attorney intended to engage in conduct directly violative of the mandate of the article; but the record also reasonably supports the conclusion that the prosecuting attorney was merely transported by the zeal of advocacy and did not intend to inflame the sentiments of the members of the jury. This Court in the past has demonstrated reluctance to find that improper argument was so prejudicial that the defendant was effectively denied a fair trial.[2] However, our past disinclination should not be construed by the State as an indication that flagrant and deliberate prosecutorial misconduct will be countenanced.
Although these assignments raise again an issue over which we have a growing concern, we find that in this case they do not present reversible error.

ASSIGNMENTS OF ERROR NOS. 5 AND 6 BY HARVEY
Defendant Harvey argues that the Court erred in allowing the jury to convict him of the charged offense because he was not proved guilty beyond a reasonable doubt and because the Louisiana principals statute, La.R.S. 14:24, is unconstitutionally vague and overbroad.
*1234 Defendant's claim that the State did not prove his guilt beyond a reasonable doubt presents nothing for this Court to review. Our examination of the record indicates that there was substantial evidence of each essential element of the charged offense, and we therefore find defendant's contention to be meritless. State v. Lewis, 332 So.2d 223 (La.1976); State v. Douglas, 278 So.2d 485 (La.1973).
Defendant further argues that La. R.S. 14:24 is unconstitutionally vague and overbroad. The statute provides:
"All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals."
Article I, Section 13 of the Louisiana Constitution of 1974 provides that an accused in a criminal prosecution "shall be informed of the nature and cause of the accusation against him." This Court, in State v. Mitchell, 319 So.2d 357 (La.1975), held that the Louisiana constitutional guarantee of due process of law is synonymous with the federal constitutional requirement of statutory definiteness set forth by the Supreme Court in United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954):
"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."
See also, Marks v. United States, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977); Rose v. Locke, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); Connick v. Lucky Pierre's, 331 So.2d 431, 434 (La.1976).
We do not find the statute in question to be either vague or overbroad. The clear language of La.R.S. 14:24 is quite sufficient to "give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." The instant assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 5 BY ATWELL
Defendant Atwell contends that he was denied his "right to a speedy trial and due process of law" by the action of the State in "intentionally waiting two and one-half years before obtaining an indictment against him." A motion to quash, asserting this claim, was filed by defendant's trial counsel; however, the court minutes of January 27, 1976 indicate that the motion to quash based upon a denial of speedy trial was withdrawn by the defendant. Therefore, the trial court was not called upon to rule on the motion and the issue was not properly preserved for review by this Court. Cf. State v. Neyrey, 341 So.2d 319 (La.1976); State v. Speed, 335 So.2d 28 (La.1976). Defendant's fifth assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 7 BY HARVEY
Harvey asserts that the trial court erred in denying his motion for a new trial based on the affidavit of a juror, Mrs. Donna Leeson, who stated that she was not convinced beyond a reasonable doubt that he was guilty of the charged offense. The instant situation is controlled by La.R.S. 15:470, which provides:
"No juror, grand or petit, is competent to testify to his own or his fellows' misconduct, or to give evidence to explain, qualify or impeach any indictment or any verdict found by the body of which he is or was a member; but every juror, grand or petit, is a competent witness to rebut any attack upon the regularity of the conduct or of the findings of the body of which he is or was a member."
We have consistently held that, under the above-cited article, a juror's affidavit that he erred in voting for conviction may not be considered on a motion for a new trial. See, State v. Hatch, 305 So.2d 497 (La.1975), *1235 cert. denied, 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 63, and authorities cited therein.
Defendant's seventh assignment of error is insubstantial.

ASSIGNMENTS OF ERROR NOS. 7 AND 8 BY ATWELL
Atwell contends that the admission by the trial court of testimony relating to inculpatory statements made by Harvey which referred to Atwell constituted prejudicial, reversible error on the part of the trial court. He argues that the admission of the statements violated the right to confrontation and cross-examination of witnesses guaranteed to him by both the Sixth Amendment to the United States Constitution and by Article I, § 16 of the Louisiana Constitution of 1974. He relies upon Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), for the proposition that a correct interpretation of the Sixth Amendment guarantee forbids the admission of such testimony.
Bruton is inapposite to the instant prosecution. The Supreme Court in that case was confronted with a situation in which a co-defendant's confession was admitted and the confessor chose not to take the witness stand. Bruton's conviction was reversed because "[p]lainly, the introduction of [the co-defendant's] confession added substantial, perhaps even critical, weight to the Government's case in a form not subject to cross-examination, since [the co-defendant] did not take the stand." 391 U.S. at 127-8, 88 S.Ct. at 1623. In the case at bar, however, James Harvey testified and was subject to cross-examination by Atwell's counsel as to the content of the statements which he purportedly made to Barbara Hooper and Diane Lawrenson.[3] Thus, the rule enunciated in Bruton [4] is not applicable to the case at bar, and defendant's assignments of error are therefore without merit.

ASSIGNMENT OF ERROR NO. 8 BY HARVEY
Defendant contends that the trial court erred in granting the State's motion for a continuance and "forcing him to trial with defendant Atwell." In support of his position, Harvey relies upon Louisiana Code of Criminal Procedure Article 714, which provides:
"When defendants are jointly indicted and a continuance is granted to one of them, the court may grant a continuance to any of the others, on his motion. However, a continuance granted to one defendant shall not deprive other jointly indicted defendants of a prompt trial unless the state can show good ground for continuance as to them."
Harvey asserts that he was deprived of a prompt trial without an affirmative showing by the State that good cause existed for a granting of the continuance.
In its motion for continuance, the State alleged that the continuance was necessary because the recent extradition of Atwell had made it impossible for his attorney to be ready for trial and because "the State would be forced to bring [witnesses] in from out of town twice if the Court does not grant this continuance." This Court has repeatedly held that a trial judge's ruling on a motion for continuance will not be disturbed unless there was an arbitrary or unreasonable abuse of the discretion vested in him. State v. Roberts, 278 So.2d 56 (La.1973); State v. Polk, 258 La. 738, 247 So.2d 853 (1971), and authorities cited therein. A review of the record in the instant case demonstrates that the trial judge did not abuse his discretion by granting a continuance of approximately one month to the State; further, we find that the defendant has failed to demonstrate that he was prejudiced as a result of this delay. La.C.Cr.P. art. 921. Defendant's eighth assignment is meritless.

*1236 ASSIGNMENT OF ERROR NO. 11 BY ATWELL
Defendant Atwell contends that the trial court erred in denying his written motion for special jury charges. Louisiana Code of Criminal Procedure Article 807 provides that such a charge shall be given by the court "if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent." The article further states that the charge "need not be given if it is included in the general charge. . . ."
In the instant case, the record designated to this Court by the defendant for our review does not contain the general charge given by the trial court to the jury. Under these circumstances, the instant assignment of error presents nothing for review. State v. Martin, 250 La. 705,198 So.2d 897 (1967); see also, State v. Fox, 251 La. 464, 205 So.2d 42 (1967).
For the reasons assigned, defendants' convictions and sentences are affirmed but the case is remanded for further proceedings in accordance with the views expressed herein, reserving unto the trial court the authority to grant a new trial herein and reserving the defendants' rights to appeal from any adverse ruling by the trial court.
SANDERS, C. J., concurs in the affirmance of the conviction, but otherwise dissents.
CALOGERO and MARCUS, JJ., concur in part and dissent in part and assign reasons.
SUMMERS, J., dissents in part and concurs in part and assigns reasons.
CALOGERO, Justice, concurring and dissenting.
I believe that the trial court mistakenly refused to grant defendant Harvey's motion for new trial, and I would therefore find merit in his third assignment. At the motion hearing Harvey's co-defendant Rennie Atwell testified that he and another person had committed the robbery, and that defendant Harvey was not at all involved, even as a conspirator. Although the majority finds that the trial judge must have found Atwell's testimony incredible and upholds the presumed holding as a proper exercise of the judge's discretion I do not agree with that finding. I believe that Atwell's statement was indeed credible because it was made against his own self interest. He, after all, admitted his personal complicity in the crime at a time when his appeal was pending and his counsel had advised him to remain silent. His counsel informed him before he testified at the hearing on the motion for new trial that any testimony he gave could be used against him should his case be reversed on appeal and should he be retried. Atwell nevertheless exonerated his co-defendant. Under these circumstances, I believe that in the interest of fairness and justice a new trial was required for defendant Harvey and that the trial judge abused his discretion in refusing his request for one. See State v. Williams, 258 La. 251, 246 So.2d 4 (1971).
Therefore, I respectfully dissent from the affirmance of defendant Harvey's conviction, although I concur in the majority's affirmance and remand as to defendant Atwell's conviction.
MARCUS, Justice (concurring in part and dissenting in part).
I concur in the affirmance of defendants' convictions and sentences by the majority; I dissent from the remand to the trial court for reasons hereinafter assigned.
I do not consider that prior arrest and conviction records of prospective state witnesses constitute "evidence [which] is material either to guilt or to punishment" under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Moreover, it is not the type of evidence, if omitted, that would create a reasonable doubt as to guilt that did not otherwise exist. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Nor do I consider Brady and Agurs applicable to such criminal records as evidence which is materially favorable to the accused as impeaching evidence *1237 under our decision in State v. May, 339 So.2d 764 (La.1976), involving a possibly exculpatory statement of the accused's co-indictee. Also, such records are public records available to defendant under La.R.S. 44:1, et seq. Finally, defendant had a statutory right to question the state witnesses at trial as to their prior convictions (crossexamination on prior arrests not permitted) for the purpose of impeaching their credibility. La.R.S. 15:495. No showing is made that defendant's limited inquiry at trial in this regard did not produce truthful responses.
Accordingly, I respectfully concur in part and dissent in part.
SUMMERS, Justice (concurring).
I concur in the result in this case for the reasons assigned in my concurring opinion in State v. Ferguson, La., 358 So.2d 1214.
NOTES
[1] For an excellent discussion of the problems encountered by this Court in enforcement of Article 774, see Comment, The Paradox of the Prosecutor: Justice Versus Conviction During Closing Argument, 34 La.L.Rev. 746 (1974).
[2] See, e. g., State v. Brumfield, 263 La. 147, 267 So.2d 553 (1972), noted by the author of the above-cited article as a "classic illustration of prosecutorial abuse;" but see also State v. Hamilton, 356 So.2d 1360 (La.1978), No. 60,630; State v. Kaufman, 278 So.2d 86 (La.1973).
[3] Harvey's testimony was to the effect that he had no knowledge of the robbery and had made no incriminating statements whatsoever.
[4] See also, Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); State v. Hopper, 253 La. 439, 218 So.2d 551 (1969).