LANIER, Judge.
The defendant, Willard A. Paul, was charged with armed robbery, in violation of La.R.S. 14:64. He entered a plea of not guilty and, after a trial by jury, was found guilty as charged. Paul filed a motion for a new trial alleging the discovery of new and material evidence. The trial court denied the motion and sentenced Paul to serve five years at hard labor without benefit of probation, parole or suspension of sentence. This appeal followed.
FACTS
The evidence presented by the State indicated that on November 7, 1981, Estella Woods was a salesgirl for the Eckerd Drug Store located at 3651 Perkins Road in East Baton Rouge Parish, Louisiana. Prior to the 9:00 P.M. closing time, Paul and another male entered the Eckerd Store, went to the counter serviced by Woods and looked at a Sony radio worth approximately $180 and a small tape recorder. The pair left the store, but Paul returned alone just minutes prior to closing time. Paul again approached Woods’ counter, pulled up his shirt and removed a gun from his waistband and pointed it at her. Paul told Woods that his partner was outside with a gun pointed at her head and if she opened her mouth the partner would kill her. Paul walked to the end of the counter, picked up the Sony radio and started walking out of the store. Another salesgirl, Susan Booker, observed Paul take the radio and start walking out. The store’s assistant manager, Emmett J. Moore, Jr., also saw Paul walking out past the checkout booth without stopping. Moore and Booker started towards Paul. Woods approached them and warned them not to go further because Paul had a gun. Booker testified without objection that Woods was scared to death. Booker and Moore testified that they did not observe the gun. Woods was the only person to see a gun in Paul’s possession. On November 9, 1981, Paul returned to the Eckerd Store. He was observed by both Woods and Booker and the police were called. A customer, who was in the store having a prescription filled, heard the conversations of the store employees about Paul and saw him leave the store. The customer followed Paul and observed him get in a car and drive off. The customer followed Paul’s vehicle, obtained the vehicle’s license plate number, returned to the store and gave the number to the pharmacist. The police arrived at the store, and the license number of Paul’s vehicle was given to them. Paul was arrested on November 10, 1981.
Paul took the witness stand in his own defense and testified that on November 7, 1981, he went to the Eckerd Store with Gaylord Lee for the purpose of shoplifting. A third individual, Michael Cummings, remained in the parking lot in or near the car. Paul and Lee went to Woods’ counter and looked at a radio and a small tape recorder. Paul entered into a conversation with Woods who seemed to be friendly toward him. Paul and Lee left the store. Paul advised Lee that he wanted to try to talk *612 Woods out of the radio. Paul returned to the store and commenced a conversation with Woods. During the conversation, Woods agreed to let Paul have the radio if he did not let anyone see him take it. Paul denied having a gun. Paul took the radio, left the store and subsequently sold the radio to a third person. Paul returned to the store on November 9, 1981, in an attempt to persuade Woods to let him have another radio. When he was in the store, he saw Woods talking with another person and, because she looked “suspicious”, he left. On cross-examination by the State, Paul testified that Woods told the story she did to protect her job when he was observed leaving the store on November 7,1981, with the radio. Gaylord Lee also testified and generally corroborated Paul’s story.
MOTION FOR NEW TRIAL
The defendant contends that the trial court committed error by denying his motion for a new trial based on the discovery of new and material evidence. La.C.Cr.P. art. 851(3).
At the hearing on the motion for the new trial, the defendant called as a witness J. Darrell White, an employee of the East Baton Rouge District Attorney’s Office. White testified that on the morning of the trial, he talked to Estella Woods who advised him that she was no longer employed by Eckerd. White then gave the following testimony:
Q. Did she give you a reason for resigning?
A. Yes. She said that advice from her attorney said it would probably be best that, uh, she just not go back to work there and — think there was a plan of a suit or something. It was just small talk.
Q. She was engaged — she was presently there at that time engaged in a civil suit with Eckerd’s?
A. From the best that I could remember.
Q. Did she indicate to you that the reason she resigned was due to the fact there was some shortage in funds and or merchandise at her register or wherever it was?
A. She said she was not charged, uh, it was just the allegation that was made, uh, and it kind of indicated in her direction so she just got with her attorney and he thought it would be best that she did not go back to work there.
Q. Allegations were made that funds were short—
A. Yeah, that the register was short.
Q. —and or that merchandise was short?
A. Not — You know, no one said, you know, that it was her in particular, but she felt that it was being pointed in her direction.
Q. Based on that she resigned?
A. Well, just didn’t go back to work. White further testified that he gave this information to Paul’s attorney after the trial was over. Neither Paul nor the State called either Woods or a representative of Eckerd to testify at the hearing. The defendant contends that the evidence that Woods resigned from her employment with Eckerd because of alleged shortages in her register would have enabled him to impeach her credibility and that the trial court committed error by failing to grant the motion for a new trial.
The law applicable to the granting of a new trial, based on newly discovered evidence, is set forth in State v. Clayton, 427 So.2d 827, 832 (La.1983) as follows:
The burden is on the defendant to show that the new evidence was not discoverable prior to or during trial and that if the evidence had been introduced at trial, the new evidence probably would have caused the trier of fact to reach a different verdict. State v. Coleman, 390 So.2d 865 (La.1980).
The trial judge is afforded considerable discretion in evaluating the impact of newly discovered evidence, and his denial of a motion for a new trial will not be disturbed on appeal absent a clear abuse of that discretion. State v. Talbot, 408 *613 So.2d 861 (La.1981) (on rehearing); State v. Spell, 399 So.2d 551 (La.1981). In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Molinario, 400 So.2d 596 (La.1981); State v. Bagley, 378 So.2d 1356 (La.1979); State v. Williams, 362 So.2d 530 (La.1978).. ..
See also State v. Robicheaux, 412 So.2d 1313 (La.1982).
In a criminal trial, each side has the right to impeach the credibility of a witness sworn on behalf of the other side. La.R.S. 15:486. However, the witness may only be impeached with matters that are material and relevant to the issues in the trial; it is not competent to impeach a witness as to collateral facts or irrelevant matter. La. R.S. 15:494.
The testimony of J. Darrell White that Estella Woods resigned from her job with Eckerd on the advice of her attorney because of a civil suit or potential civil suit concerning shortages in her register does not provide a basis for impeaching Woods’ testimony at the trial. Although the credibility of a witness may be attacked generally by showing that his (or her) general reputation for truth or for moral character is bad, such an attack must be limited to general reputation and cannot go into particular acts, vices or courses of conduct. La.R.S. 15:490-491; State v. Frentz, 354 So.2d 1007 (La.1978). White’s testimony does not indicate that the alleged register shortage was in any way connected with the offense committed by Paul, and thus this evidence has no bearing on the credibility of the witness in the instant case. La. R.S. 15:490. White’s testimony does not show that Woods has been convicted of a crime. La.R.S. 15:495. White’s testimony does not show that Woods was biased, had an interest in the case or was corrupted. La.R.S. 15:492. The evidence does not reflect that Woods’ dispute with Eckerd created a personal bias against the defendant. State v. Bretz, 394 So.2d 245 (La.1981). The evidence does not reflect that the dispute resulted in criminal charges that the district attorney’s office used as “leverage” over her. State v. Brady, 381 So.2d 819 (La.1980).
One of the essential requisites a defendant seeking a new trial based on newly discovered evidence must prove is that the evidence is material to the issues at the trial. State v. Talbot, 408 So.2d 861 (La.1980). The defendant in the instant case has failed to show that the newly discovered evidence impeaches the witness. Since the newly discovered evidence cannot be used for impeachment, it is neither material or relevant to these proceedings. The judgment of the trial court rejecting the application for the new trial is correct.
CONCLUSION
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.