FRED W. JONES, Jr., Judge.
The defendant Scalia was convicted in a bench trial of two counts of aggravated assault (La.R.S. 14:37). He was sentenced to pay a fine of $500, and to serve six months in the parish jail on each count. The jail sentences were suspended and the defendant placed on unsupervised probation for two years. We granted a writ of review to consider defendant’s contention of trial court errors.
Defendant reserved four assignments of error. Finding merit in the first assignment, we pretermit discussion of the others.

Factual Context

Scalia, a thirty three year old college student and parttime private investigator, was assigned by his employer on the evening of March 29, 1985 to locate one Lori Montgomery and serve a subpoena upon her in connection with a divorce case. In the process of attempting to complete this assignment, Scalia drove from Monroe to the house in Morehouse Parish where Hollis, Montgomery’s boyfriend, was staying with his mother and stepfather. Scalia drove by the house several times at a slow rate of speed, shining his headlights into the front yard. This caused the residents of the dwelling to become upset. Hollis’ stepfather got into his car and attempted to follow Scalia and learn his identity, but returned with a report that he was unsuccessful.
When Hudson, Hollis’ friend, decided to leave in his automobile, Hollis and Montgomery also left in a pickup truck to go to the store. On the way they noticed Scalia’s *1181 vehicle parked on a dead-end street. Hollis drove down the street toward Scalia while Hudson waited at the end of the street. Scalia immediately drove to U.S. Highway 165 and headed toward Monroe. Hollis and Hudson followed him at a high rate of speed, with the speed of the vehicles, at times, exceeding 75 miles per hour.
After a time Scalia’s car developed engine problems and he coasted into the parking lot of a pharmacy in Ouachita Parish. Hollis and Hudson followed Scalia into the lot and parked in the vicinity of his vehicle. Scalia immediately got out of his car, pulled a pistol, ran to the Hollis pickup truck, and pointed the weapon at Hollis. He then had Hollis order Hudson to leave. Scalia followed this by commanding Hollis to get out of his vehicle. Both Hollis and Montgomery exited the truck and knelt with their hands behind their heads. Scalia held the two at gunpoint for about ten minutes until law enforcement officers arrived.
Scalia was charged with three counts of aggravated assault. However, because of Hudson’s accidental death prior to trial, one count was dismissed.
ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial court erred in ruling that evidence concerning the general reputation of the victims was inadmissible for any purpose if the defendant did not know the victims.
Once an overt act on the part of the victim has been shown by appreciable evidence, testimony concerning the victim’s general reputation is admissible in support of a plea of self-defense. La.R.S. 15:482; State v. Edwards, 420 So.2d 663 (La.1982).
The term “overt act” means conduct by the victim of such character as to create in the mind of a reasonable person the belief that he is in immediate danger of losing his life or of suffering great bodily harm. State v. Williams, 410 So.2d 217 (La.1982).
When evidence of a victim’s dangerous character is sought to be introduced to show the defendant’s state of mind, the defense must also show that the defendant knew of the victim’s prior threats or reputation. On the other hand, if the purpose of presenting evidence of the victim’s general reputation is to prove that the victim was the aggressor, there is no requirement that the defendant have prior knowledge of the victim or his general reputation or prior acts.
We find that the acts of the victims in following defendant at a high rate of speed and “cornering” him in the pharmacy parking lot constituted an “overt act” which served as a predicate for the introduction of evidence concerning their general reputation. The trial judge committed reversible error in requiring that the defendant also know the identities of the parties following him.

Decree

For the reasons stated, we reverse defendant’s convictions and set aside his sentences, and remand the case to the district court for a new trial. In the event that defendant, upon retrial, is convicted of more than one misdemeanor count, we call to the attention of the trial judge the limitation upon sentencing mandated by La.C. Cr.P. Article 493.1.